IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY McCOY,

    Plaintiff,

v.                                                                                         Civil Action No. 3:11CV09

DR. ABBASI, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Anthony McCoy, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] McCoy contends that during his incarceration at the Nottoway Correctional Center ("NCC"), Warden B.B. Watson, Dr. Abbasi, and Nurse Hightower denied him adequate medical care in violation of the Eighth Amendment.[2] The matter is before the Court on McCoy's failure to serve Dr. Abbasi, McCoy's failure to state a claim against Nurse Hightower, and Warden Watson's Second Motion for Summary Judgment. McCoy has responded to the Second Motion for Summary Judgment. These matters are ripe for disposition.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

# I. McCOY'S FAILURE TO SERVE DR. ABBASI

Pursuant to Federal Rule of Civil Procedure 4(m), McCoy had one hundred and twenty (120) days from the filing of the complaint to serve Dr. Abbasi. Here, that 120 day-period commenced on October 19, 2011. By Memorandum Order entered on October 19, 2011, the Court directed the United States Marshal to serve Dr. Abbasi at the address provided by McCoy. On October 24, 2011, the United States Marshal returned the summons for Dr. Abbasi unexecuted. On the return, the Deputy United States Marshal stated, "Talked to associate of Dr. Abassi [sic], Vulfi Abassi [sic], who notified [Deputy United State Marshal] Palmer that Dr. Abassi [sic] has left the country to Saudi Arabia with no known return date." (Docket No. 16, at 2 (punctuation and capitalization corrected).) By Memorandum Order entered on June 12, 2012, the Court directed McCoy to show good cause for his failure to serve Dr. Abbasi within the time required by Rule 4(m).

On June 18, 2012, the Court received McCoy's response. McCoy states, "I do not know how . . . to carry out this action against Dr. Abbasi will be possible now that he [is] in Saudia [sic] Arabia, and we don't know how long he will be gone." (Docket No. 27, at 1.)

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 120-day period. Fed. R. Civ. P. 4(m). Courts within the Fourth Circuit found good cause to extend the 120-day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'" *Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (*quoting Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Since learning of Dr. Abbasi's departure from the country, McCoy has not made any efforts to ascertain Dr. Abbasi's address or proffer any hope that he will be able to

2

serve Dr. Abbasi in the near future. Given these circumstances, McCoy has failed to state good cause for extending the time for service of Dr. Abbasi. *See McCoy v. Abbasi*, No. 3:10CV875, 2012 WL 4933301, at *1–2 (E.D. Va. Oct. 16, 2012) (dismissing complaint under Rule 4(m) for a similar failure to timely serve Dr. Abbasi). Accordingly, all claims against Dr. Abbasi will be DISMISSED WITHOUT PREJUDICE.

## II. McCOY'S FAILURE TO STATE A CLAIM AGAINST NURSE HIGHTOWER

### A. Standard of Review

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

3

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

## B. Summary of Allegations

In his Complaint McCoy alleges:

> I have a bulged disc in my lumbar spine and pinched nerves in my back. This was proven/verified by the MRI that I had done at MCV/VCU on Oct. 22, 2010. This is because a bunch of prison guards assaulted me. The orthopedic doctor at MCV recommended that I be prescribed some type of actual pain killer for the pain in my spine at least until I go back to MCV if the pain is too much for me. He said he would make sure it was put in the report so the physician here would see that it's not just comming [sic] from me. The physician here denies that it's in the report. His name is Dr. Abbasi & he refuses to offer any type of medicine except for Motrin and Tylenol. Nurse Hightower too. The Warden, Warden Watson, won't help. He keeps putting my complaints off on the same people I'm complaining about in medical. I've requested the mailing address to Dr. Ofog numerous times. Dr. Ofog is the boss/head physician of all of the physicians that work in the Virginia prisons. Nurse Hightower keeps refusing to provide me with Dr. Ofog's mailing address. Warden B.B. Watson won't either.

(Compl. 5 (capitalization and punctuation corrected).)

## C. Analysis

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, McCoy's claim against Nurse Hightower is predicated on her failure to administer stronger pain killers than Dr. Abbasi had authorized.[3] A nurse does not act with deliberate indifference when he or she adheres to the treating physician's directions regarding the administration of the appropriate pain medication. *See Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) (concluding inmate could not state a claim against nurse who followed doctor's orders regarding prescribed medication); *Thomas v. Davis*, No. 3:07–CV–205 WL, 2008 WL 2157161, at *3 (N.D. Ind. May 22, 2008) ("Nurses take orders from doctors. The nurse had no duty to independently diagnose [the inmate] contrary to the professional judgments rendered by the treating physicians."). Accordingly, McCoy's claim against Nurse Hightower for the denial of adequate medical care will be DISMISSED.

### III. WATSON'S SECOND MOTION FOR SUMMARY JUDGMENT

#### A. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[3] Although McCoy also complains that Nurse Hightower refused to provide him with Dr. Ofog's address, such a refusal implicates no constitutional rights.

6

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Warden Watson asks the Court to dismiss McCoy's claim because McCoy failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Warden Watson bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of his contention, Warden Watson submits the affidavit of A. James, the Grievance Coordinator at NCC (Mem. Supp. Def.'s Second Mot. Summ. J. Ex. I ("James Aff.")), Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1 (*id.* Encl. A ("Operating Procedure § 866.1")),[4] copies of a regular grievance (*id.* Encl. B), and informal complaints (*id.* Encls. C, D).

In response, McCoy submits an unsworn response. (Docket No. 31.) Unsworn argument contained in memoranda does not constitute evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Second Motion for Summary Judgment.

---

[4] The Court has omitted the emphasis in the quotations to this document.

B.  **Summary of Pertinent Facts**

   1.  **VDOC's Grievance Procedure**

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints at NCC. (James Aff. ¶ 4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

   (a)  **Grievance Intake Procedure**

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (Operating

8

Procedure § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.4.)

### (b) Transfer of the Inmate

> If an inmate submits an informal complaint and is transferred to another prison before receiving a response, the response is mailed to him at the prison to which he was transferred. If the inmate is not satisfied with the response to informal complaint, he may submit a regular grievance attaching the required documentation by mailing it to prison where the complaint took place. The Level I response will be mailed to the inmate's new prison assignment.

(James Aff. ¶ 7.)

### (c) Grievance Appeals

Up to three levels of review for a regular grievance exist. (Operating Procedure § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### 2. McCoy's Grievance Material

On November 29, 2010, the Grievance Office at NCC received a regular grievance from McCoy. (James Aff. ¶ 11; James Aff. Encl. B 1.) In that grievance, McCoy complained that Dr.

9

Abbasi was failing to provide appropriate pain medication. (James Aff. ¶ 11; James Aff. Encl. B 1.) "Officer Ortiz, an alternate Grievance Coordinator at that time, responded to McCoy's grievance on November 29, 2010, and noted on the back of the grievance form that McCoy did not use the informal process to resolve his complaint." (James Aff. ¶ 11; *see* James Aff. Encl. B 2.) "Since McCoy's grievance did not meet the intake criteria, Officer Ortiz did not accept the grievance .... The grievance was returned to McCoy." (James Aff. ¶ 11.)

"On December 29, 2010, McCoy submitted an Informal Complaint that Nurse Hightower refused to provide him with the mailing address for Dr. Ofog. He was provided with a response on January 4, 2011, and was given the mailing address for Dr. Ofog. McCoy was provided with the requested information." (James Aff. ¶ 13; *see* James Aff. Encl. D 1.)

"McCoy submitted an Informal Complaint on December 29, 2010, complaining that Dr. Abbasi and Nurse Hightower refused to uphold the recommendation of the orthopedic doctor at MCV that he be given pain medication. McCoy received a response to the Informal Complaint on January 4, 2011." (James. Aff. ¶ 12; *see* James Aff. Encl. C 1–2.) "If McCoy wanted to pursue his complaint through the grievance procedure, he should have resubmitted his regular grievance after receiving the response to his Informal Complaint. McCoy did not resubmit his regular grievance ...." (James Aff. ¶ 12.)

On January 4, 2011, McCoy was transferred from NCC. (James Aff. ¶ 10.)

### C. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the

grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

Here, McCoy failed to comply with the applicable prison rules for properly exhausting his administrative remedies. *Id.* These rules required McCoy first to pursue an informal complaint concerning his claims (Operating Procedure § 866.1.V.A.1), and then to attach a copy of the informal complaint to his regular grievance. (*Id.* § 866.1.VI.A.2.a.) McCoy did not comply with this requirement.

"[A] prisoner, [such as McCoy] cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies." *Scott v. Kelly*, No. 1:11cv25 (AJT/TCB), 2011 WL 6046400, at *2 (E.D. Va. Dec. 2, 2011) (*citing Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008)). Because McCoy failed to file a proper grievance with respect to his present claims and pursue the grievance through all available levels of appeal, he failed to exhaust his administrative remedies. *See McCoy v. Williams*, 3:10CV349, 2011 WL

11

5153253, at *3 (E.D. Va. Oct. 28, 2011). Accordingly, Warden Watson's Motion for Summary Judgment (Docket No. 28) will be GRANTED.

"Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate 'where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust.'" *Id.* at *4 (*quoting Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)). Because the time for pursuing a regular grievance with respect to McCoy's current claims has long since expired, *see* Operating Procedure § 866.1.VI.A.1, McCoy's claim falls within this criteria. Accordingly, McCoy's claims against Warden Watson will be DISMISSED WITH PREJUDICE. The action will be DISMISSED.

An appropriate Final Order shall issue.

Date: 12/14/12
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge